# LAW OFFICES OF JOSEPH F. KILADA, P.C.

**Long Island Office**
100 Quentin Roosevelt Boulevard, Suite 208
Garden City, NY 11530
Phone: (516) 222-0454
Fax: (516) 908-4266

February 14, 2015

**VIA ECF & FACSIMILE**
Hon. John Gleeson
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   **UNITED STATES V. [REDACTED]**
       **12-CR-078 (JG)**

Dear Judge Gleeson:

## INTRODUCTION

Mr. [REDACTED] is before Your Honor for sentencing after having entered a guilty to a four-count information.

At the prior conference, counsel made an oral application, and was granted permission to file the instant sentencing memorandum under seal. Counsel was also directed by the Court to be prepared to discuss the issue of public access to sentencing and has incorporated same under separate cover (ECF Entry #15).

1

In the plea agreement, Mr. ▓ and the government stipulated to a total offense level of 33 and a Criminal History Category of I to be determined by the Probation Department. The corresponding sentencing range is 135 to 168 months.

Mr. ▓ guilty plea in accordance with the plea agreement calls for an adjusted offense level of 33 which is derived as follows:

| | | |
|---|---|---:|
| Base Offense Level (2D1.1 (c)(7)) | | 38 |
| Less: | Acceptance of Responsibility (3E1.1 (a)) | -2 |
| Less: | Guilty plea pursuant to (3E1.1(b)) | <u>-1</u> |
| **Total Offense Level** | | **35** |

### SAFETY VALVE

Subsequent to the guilty plea, Mr. ▓ has successfully participated in a "Safety Valve" proffer session with the government which entitles him to a further reduction in the offense level of 2 points pursuant to U.S.S.G. § 5C1.2, 2D1.1(b)(17). A 2 point reduction creates an offense level of 33 with a Criminal History Category I. The corresponding range of imprisonment is **135 to 168** months.

**TOTAL ADJUSTED OFFENSE LEVEL**                          **33**

<u>Along with this memorandum, Mr. Iucci submits the following letters written on his behalf from family and friends to aid the court in sentencing</u>

| | | |
|---|---|---|
| Exhibit A | Defendant's ▓▓▓▓ | ▓▓▓▓ |
| Exhibit B | Defendant's ▓▓▓▓ | ▓▓▓▓i |
| Exhibit C | Defendant's ▓▓▓▓ | ▓▓▓▓ |
| Exhibit D | Defendant's ▓▓▓▓ | ▓▓▓▓ |

| Exhibit E | Defendant's ███████ | ███████████ |
| Exhibit F | Defendant's ███████ | ███████████ |
| Exhibit G | Defendant's ███████ | ███████████ |

## SUBSTANTIAL ASSISTANCE AFFORDED TO THE GOVERNMENT

███████████ has afforded substantial assistance to the government, and as such, the government will be issuing a letter pursuant to section 5K1.1 of the United States Sentencing Guidelines. Pursuant to Section 5K1.1 of the United States Sentencing Guidelines and Title 18 United States Code Section 3553(e), Mr. ████ respectfully asks the Court, in its discretion, to exercise a downward departure from the applicable advisory United States Sentencing Guidelines and impose a greatly reduced sentence.

In United States v. Martes, No. 09 Cr. 1143, 2014 U.S. Dist. LEXIS 59753, at *17 (S.D.N.Y. April 29, 2014) the United States District Court for the Southern District of New York found that downward departure was warranted where the defendant provided substantial information about his co-defendants to the government which potentially subjected defendant and his family to a level of risk and danger. The defendant with total offense level of 35 with a Criminal History Category of III was sentenced to time served and 3 years supervised release. See also United States v. Garcia, No. 10 Cr. 249-01, 2014 U.S. Dist. LEXIS 36415 (S.D.N.Y. March 18, 2014) (Defendant with a total offense level of 19 and Criminal History Category of I sentenced to time served and 3 years supervised release on each count. The court noted that "[d]efendant's immediate and substantial cooperation following her arrest, provision of information on her coconspirators criminal conduct and participation in several audio and visually recorded meetings with individuals involved in conduct similar to the instant offense

that placed her in substantial risk are considerations to be taken into account"). In United States v. Hampton, No. 13 Cr. 301-01, 2013 U.S. Dist. LEXIS 137820, at *15 (S.D.N.Y. Sept. 25, 2013) the same court held that downward departure was appropriate in light of defendant's immediate cooperation when approached by the Government.

Mr. ▓ provided substantial assistance to the government and although Mr. ▓ did not testify, his name was disclosed as a witness in this case which certainly induced guilty pleas from other defendants. An unfortunate by product has been real threats to his person. The life of Mr. ▓ is presently, and will continue to be in great danger as a result of his significant cooperation. He has stated that every time he leaves his home, he fears for his life. Defendant's immediate and full cooperation along with the grave danger he has put himself in by providing the information to the government, warrants a substantial downward departure. Id.

## ARGUMENT

### ANALYSIS OF THE SENTENCING FACTORS ENUMERATED IN SEC. 3553(A) DEMONSTRATES THAT ▓ SHOULD NOT BE SENTENCED TO ANY TERM OF IMPRISONMENT.

Post-*Booker* sentencing affords the court ample discretion to impose an appropriate, reasonable, and just sentence in this case that conforms with the sentencing factors and purposes of sentencing set forth in §3553(a). For the reasons set forth below, it is respectfully submitted that a non-jail sentence for Mr ▓ be imposed.

The Supreme Court's decision in U.S. v. Booker, *543 U.S. 220, 125 S. Ct. 738 (2005)* heralded the end of the federal sentencing guidelines (hereinafter "Guidelines") as a mandatory element of sentencing. 543 U.S. at 226. The threshold substantive holding was joined by a "remedial" opinion that severed the sections of the Sentencing Reform Act, which made the Guidelines mandatory, 543 U.S. at 245-246, and left the Guidelines themselves in place as just

4

another of the seven considerations listed in 18 U.S.C. § 3553(a) that a sentencing court must consider in determining a sentence that is, according to §3553(a), "sufficient but not greater than necessary to comply with the purposes of sentencing set forth in" §3553(a)(2). *See* Simon v. United States, 361 F. Supp. 2d 35, 39, 47 (E.D.N.Y. 2005).

**The Text of 18 U.S.C. § 3553 states:**

**a) Factors To Be Considered in Imposing a Sentence.** The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
**(i)** issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(ii)** that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or
**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

**(5)** any pertinent policy statement—
**(A)** issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
**(B)** that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

### APPLICATION OF THE FACTORS IN 18 U.S.C. SEC. 3553 ▓

The ultimate objective, according to the operative statute, 18 U.S.C. § 3553(a), is a sentence "sufficient, but not greater than necessary" to achieve the purposes of sentencing. For the reasons set forth below and in the papers filed herewith, it is respectfully submitted that a non-jail sentence for ▓ be imposed.

**(1) The nature and circumstances of the offense and the history and characteristics of ▓**

   **a) Nature and Circumstances of the Offense:**

The nature and circumstances of the offense have been set forth in the Presentence Investigation Report (hereinafter "PSR") and are undisputed. From the time of his arrest, Mr. ▓ made no attempt to minimize his crimes and has taken full responsibility for same. Mr. ▓ involvement in this case to which he entered a guilty plea involved no identifiable victims, nor do his actions fit the profile of a manager or leader since he maintained no leadership, supervisory, managerial or organizational role. See PSR at ¶20.

   **b) History and Characteristics of Stephen Iucci:**

   i. ▓ History

The defendant is a loving and devoted father, brother and friend. Mr. ▓ was born on ▓ into a lower income household. He was raised by his mother and his

6

physically/verbally abusive father until his parents divorced when defendant was the age of four. His father was addicted to gambling and was considered to be a "womanizer."

Mr. ███ married in 1988 and has two daughters, ███████ (age 24) and ███████ ███████ (age 23). Although Mr. ███ and his wife divorced in 2003, they maintain an amicable relationship to this day. See Exhibit D, Letter of ███████. Mr. ███ has an extremely strong relationship with both of his daughters, as well as his stepson ███████ (his ex-wife's son from a previous relationship) who defendant cared for as his own biological child. Letters from defendant's family attest to his strong familial relationships. Mr. ███ daughters maintain close contact with him and rely on his emotional support. See Exhibits B & C, Letters of defendant's daughters, ███████ and ███████.

    ii.    The Incarceration of ███████ Would Cause Extraordinary Destruction

Mr. ███ is the sole caretaker of his ailing half-sister and his incarceration would leave her with no one to care for her. In this case, imprisonment would have the collateral consequence of punishing his sister.

"The Second Circuit has long recognized the propriety of sentencing below the Guideline range when a term of imprisonment may 'wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing.'" United States v. Yit Tin Kon, No. 04 Cr. 271-03, 2006 U.S. Dist. LEXIS 81407 (S.D.N.Y. November 2, 2006) (holding downward departure was appropriate due to the lack of any other adult to care for defendant's daughter in the event defendant was incarcerated), citing United States v. Johnson, 964 F.2d 124, 129 (2d Cir.1992).

Further, the Second Circuit has set forth the standard utilized to weigh the severity of the impact of a defendant's imprisonment upon a family. United States v. Huerta, 371 F.3d 88 (2d Cir. 2004). "Specifically, the Circuit articulated that "this factor -- the absence or presence of

7

adults who can step in during the defendant's incarceration to assist with caring and providing for the defendant's dependents -- is a central part of the extraordinary family circumstances inquiry." Id. at 95.

Importantly, the United States District Court for the Southern District of New York in Yit Tin Kon noted,

> While the Huerta court emphasized that all families suffer when a family member is incarcerated for any length of time, that expected degree of suffering is exacerbated exponentially when no other adult in the family can provide alternative means of assistance or support for the defendant's dependents. According to the Circuit, when no such reasonable alternative is available, and the defendant is the sole care-taker of his or her dependents, a sentencing court can exercise its discretion under a finding of extraordinary family circumstances.

Id. at 14-15. See also U.S. v. Blake, 89 F.Supp2d 328 (E.D.N.Y. 2000) (departure from level 29 to level 8 and probation proper in part because emotional trauma 3 year old daughter would suffer if defendant was incarcerated); U.S. v. Kloda, 133 F.Supp.2d 345 (S.D.N.Y. 2001) (father and daughter who filed false tax returns for their business entitled to downward departure in part because of needs of daughter's small children) (the court noting that "a judge must sentence without ever being indifferent to a defendant's plea for compassion, for compassion is also a component of justice."); U.S. v. Alba, 933 f.2d 1117, 1122 (2d Cir. 1991) (where defendant and wife cared for four and eleven year old and disabled father and paternal grandmother, incarceration could well result in destruction of an otherwise strong family unit). See generally, John Hagan & Ronzit Dinovitzer, Collateral Consequences of Imprisonment for children,Communities, and Prisoners, 26 Crime & Justice 121 (1999) ("A departure is most appropriate when the defendant could be given probation(or home confinement) rather than incarceration with only a small downward departure").

[REDACTED] who is widowed with no children relies solely on Mr. [REDACTED] for her care. Mr. [REDACTED] has resided with [REDACTED] for the past three years during which time the defendant has been her sole caregiver. [REDACTED] was diagnosed with [REDACTED] which condition has since worsened when she fell during the winter of 2013 causing her to hit her head and lose consciousness. [REDACTED] relies on [REDACTED] to provide care and meals for her in the home and bring her to her medical appointments. In a letter [REDACTED] submitted to the Court, she stated:

> I am unable to drive, nor am I able to do a lot of task[] on my own. [REDACTED] takes me to all my doctors appointments, does the grocery shopping and cooking. [REDACTED] is my primary caretaker and the only one I can depend on. I need him in my life more than ever. Without him, there won't be anybody to take care of my daily needs.

See Exhibit A, Letter of [REDACTED]

There is simply no alternative of care for defendant's sister in this case. If Mr. [REDACTED] is incarcerated, his sister will suffer dramatically and will have no one to care for her, thus wreaking extraordinary destruction on defendant's sister's circumstances.

### (B) to afford adequate deterrence to criminal conduct

i. **Extreme Remorse:**

From the time defense counsel met with Mr. Iucci, he took immediate and full responsibility for his actions and frequently has expressed great remorse for his crimes. This is evidenced by the lengths he went through to cooperate with the government and provide substantial assistance.

ii. **Mr. [REDACTED] Does not present a Risk of Recidivism:**

Mr. [REDACTED]'s age at the time of this sentencing (age 50) makes the probability of recidivism unlikely. United States v. Hodges, No. 07 Cr. 707, 2009 U.S. Dist. LEXIS 10683, at *26 (E.D.N.Y. Feb. 12, 2009) (citations omitted) (considering the defendant's age in fashioning his

sentence and noting that "post-Booker, courts have observed that recidivism is markedly lower for older defendants" and that "[t]he Guidelines do not take into account the inverse relationship between age and recidivism").

### (C) to protect the public from further crimes of the defendant

████ is unlikely to engage in further criminal activity in light of his cooperation with the government, acceptance of responsibility, his familial responsibilities and his poor health. See United States v. Wilson, No. 07 Cr. 423, 2010 WL 2246417, at *2; United States v. Baum, No. 04 Cr. 508, 2007 U.S. Dist. LEXIS 81865, at *4 (E.D.N.Y. October 30, 2007) (finding "substantial evidence of rehabilitation" as defendant cooperated with the government for almost 4 years) ("The court observed the close family relationship between defendant and other members of his family. They will undoubtedly assist in his further rehabilitation").

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As discussed more fully below, it is questionable as to whether Mr. ████ will receive adequate medical care that would accommodate his needs if incarcerated. In addition, if incarcerated, there is a risk that his health could decline further.

### MOTION FOR DOWNWARD DEPARTURE BASED ON HEALTH

U.S.S.G. §5K2.0 is a policy statement that describes generally the circumstances under which a court may depart from the sentencing guideline range. That section provides in pertinent part, "a circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination *if the circumstance is present in the case to an exceptional degree."*

Here, the circumstance at issue is Mr. ████ medical conditions and the fact that

incarceration would exacerbate his conditions. A downward departure may be warranted pursuant to U.S.S.G. §5H1.4, based upon physical condition, whereas here the defendant suffers from "extraordinary physical impairment." While the Sentencing Guidelines discourage consideration of this factor, the mere fact that a certain defendant characteristic may not ordinarily be relevant to a departure determination does not preclude its consideration by the Court. United States v. Restreppo, 999 F.2d 640, 643-44 (2d Cir. 1993).

The Court of Appeals has increasingly recognized the importance of departure by reason of offender characteristics for the fair fulfillment of the sentencing scheme prescribed by the Sentencing Reform Act and the Sentencing Guidelines. *Id.*, at 643; see also, United States v. Merritt, 988 F.2d 1298, 1309 (2d Cir.). cert. denied, 508 U.S. 961, 113 S.Ct. 2933 (1993) (departure in the appropriate case is essential to the satisfactory functioning of the sentencing system); United States v. Lara, 905 F.2d 599, 603-04 (2d Cir. 1990) (same). Further, the Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." United States v. Johnson, 964 F.2d 124, 125 (2d Cir. 1992).

In addition, other circuits have held that "a court may find an extraordinary impairment when imprisonment would threaten or shorten a defendant's life or when the BOP would be unable to adequately meet the defendant's medical needs." U.S. v. Martin, 363 F. 3d 25, 30 (1st Cir. 2004). Further, the Southern District of New York has acknowledged that a defendant

> could expect that the quality of medical attention she would receive ... during incarceration would not equate to the quality of health care she would receive in private medical facilities. She could not anticipate, however, that when the time arrived for her to give birth... that her cries and calls for help would be ignored by the custodial officials placed in charge of her health and safety... and that she would thus be subjected to the extreme fear of risk to her life...

U.S. v. Mateo, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004).

Significant departure from the sentencing guidelines is warranted in this case, as Mr. [redacted] suffers from numerous health conditions which would not be treated with the quality of care that he receives privately. Id.

Mr. [redacted] was diagnosed with pigmentary glaucoma and has undergone laser treatment to lower his intraocular pressure. He has severe glaucoma damage in his right eye and must be seen by his physician every four months. Mr. [redacted] is prescribed topical medications for his condition. See Exhibit F, Letter of [redacted] M.D., dated January 15, 2015.

In addition, Mr. [redacted] is being monitored by his physician for the diagnoses of [redacted] [redacted] [redacted] and [redacted]. He has also been diagnosed with [redacted] [redacted] for which he is on an [redacted] and he is being monitored by an Electro-physiologist for possible [redacted]. See Exhibit G, Letter of [redacted], M.D., dated January 14, 2015. He also been diagnosed with [redacted] and utilizes an [redacted] when he exercises outdoors. He has also been diagnosed with sleep apnea and uses a Continuous Positive Airway Pressure (CPAP) machine. See PSR ¶88.

If incarcerated, Mr. [redacted] will not be accommodated in the way he is by his private physicians. Thus, a significant departure is warranted for Mr. [redacted] and it is respectfully requested that the Court depart downwardly.

### PROPOSED "STATEMENT OF REASONS" PURSUANT TO 18 U.S.C. § 3553(C) FOR SENTENCE BELOW GUIDELINE RANGE.

This letter memorandum is respectfully submitted to present factors that favor a sentence of home detention. In determining a sufficient sentence for Mr. [redacted] this court is urged to consider Mr. Iucci's:

1. Cooperation with exposure to extreme risk
2. Acceptance of responsibility

3. Innocent family members will be punished dramatically

4. His poor health

5. His lack of criminal history

6. Mr. ████ Does not present a Risk of Recidivism

7. Mr. ████ has rehabilitated

8. Letters written by family and friends on behalf of Mr. ████

## CONCLUSION

For the foregoing reasons, ████████ respectfully submits that a sentence of home detention is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully Submitted,

Joseph F. Kilada
Attorney for Defendant