

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EAG:AL/RTP
F.#2011R00633

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 23, 2015

**TO BE FILED UNDER SEAL**

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

    Re: United States v. Stephen Iucci
      Criminal Docket No. 12-78 (JG)

Dear Judge Gleeson:

   The government respectfully submits this letter, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines") and Title 18, United States Code, Section 3553(e), to apprise the Court of the substantial assistance provided by the defendant Stephen Iucci and to permit the Court, in its discretion, to impose a sentence below the otherwise applicable statutory minimum sentence and advisory Guidelines range.  The defendant is scheduled to be sentenced by the Court on February 26, 2015.

I. Background

  A. Offense Conduct

   From 2001 to 2011, the defendant and others conspired to distribute, and in fact distributed, cocaine and marijuana.  In or around 2001, the defendant began to buy cocaine from Robert Fogliani, and eventually bought multiple ounces at a time from him for a period of approximately two years, including in amounts as high as 125 grams.  (Presentence Investigation Report ("PSR") ¶¶ 14, 18.)  The defendant also bought marijuana from multiple sources during this period.  (Id. ¶ 14, 18.)

   In 2005, the defendant began purchasing cocaine and marijuana from Lulzim Kupa and Nezir Papraniku.  (Id. ¶ 19.)  Early in this arrangement, the defendant purchased

five to ten pounds of marijuana every two weeks. (Id. ¶ 10.) Subsequently, the defendant purchased approximately 25 pounds of marijuana per week from Lulzim Kupa. (Id.) The defendant generally negotiated the purchase of marijuana with Lulzim Kupa, and Papraniku then delivered the marijuana to the defendant, although Lulzim Kupa also sometimes delivered it himself. (Id.) The defendant purchased the marijuana on consignment and, after he sold it, paid Lulzim Kupa via Papraniku. (Id.) This arrangement continued until 2006, when Lulzim Kupa was arrested. (Id.) The defendant then spent approximately three months in the Dominican Republic, after which he returned to Staten Island and purchased approximately 5-10 pounds of marijuana per week for several months from Lulzim Kupa's brother, Afrim Kupa. (Id.) The defendant resumed purchasing marijuana from Lulzim Kupa, including as recently as 2011. (Id.)

In addition, in 2005 or 2006, the defendant purchased one kilogram of cocaine from Lulzim Kupa, which the defendant sold to Robert Fogliani. (Id. ¶ 14.) Again, the defendant negotiated the purchase with Lulzim Kupa, and Papraniku delivered the cocaine. (Id.) The defendant paid $19,000 for this cocaine. (Id.) In 2011, the defendant again purchased one kilogram of cocaine from Lulzim Kupa, which again was delivered by Papraniku. (Id.) The defendant paid $30,000 for this cocaine. (Id.)

The defendant understood, based on his interactions with Lulzim Kupa, that Lulzim Kupa generally received marijuana and cocaine in shipments from California. (Id. ¶ 19.) The defendant believed that the marijuana shipments generally weighed 20 to 40 pounds, and the cocaine shipments generally weighed 8 kilograms. (Id.)

In addition, the defendant participated in drug distribution with Fogliani. (Id.) As noted above, beginning in 2001, the defendant bought cocaine from Fogliani (supplied to Fogliani by Afrim Kupa), and when the defendant subsequently obtained cocaine from others, he would from time to time sell it to Fogliani. (Id.) Beginning in the mid-2000s, the defendant operated marijuana grow houses on Staten Island with Fogliani and Keith Levine. (Id.)

At his peak, the defendant bought and sold approximately 125-250 gram of cocaine per week and approximately 2 pounds of marijuana per week. (Id.)

    B.    <u>Additional Criminal Conduct</u>

In addition to drug trafficking, the defendant has participated in credit card fraud and illegal gambling. (PSR ¶¶ 16, 21, 119.) With respect to credit card fraud, in 2010 the defendant purchased a gift card from Papraniku that he knew was acquired using a fraudulent credit card. (Id. ¶ 16 (referring to the defendant as "cooperating witness 2").) Also in 2010, the defendant accepted from Papraniku and Lulzim Kupa an iPad that he knew was acquired using a fraudulent credit card. (Id.) With respect to illegal gambling, between 1999 and 2001, the defendant participated in illegal sports gambling by operating a "sheet," i.e., accepting bets as a bookie, from approximately five or six customers.

      C.      The Statutory Minimum Sentence and Advisory Guidelines Range

Based on the offenses of conviction, the defendant faces a statutory minimum sentence of 10 years' imprisonment and an advisory Guidelines range of imprisonment of 135 to 168 months. (PSR ¶¶ 101-02.) The defendant agrees with this determination. (Def.'s Stg. Mem. at 2.)

II.      Cooperation with the Government

On April 12, 2011, Keith Levine and Michael Arroyo were arrested pursuant to a complaint charging them with possessing marijuana with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). (United States v. Levine, et al., 11 CR 345 (JG), Docket Entry Nos. 1, 2.[1]) Subsequently, Robert Fogliani, who had been involved in growing and selling marijuana with Levine, began cooperating with the government. On September 7, 2011 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a grand jury in this district returned a superseding[2] indictment against Levine, Afrim Kupa, Neil Lombardo and Joseph Sclafani. (Docket Entry No. 13.) In that superseding indictment, Kupa, Lombardo and Sclafani were charged with conspiring to distribute, and distributing cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II), respectively. (Id. ¶¶ 1-2.) In addition, Levine and Sclafani were charged with conspiring to distribute, and distributing, marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii), respectively. (Id. ¶¶ 3-4.)

Very shortly before that superseding indictment was returned, the defendant began to cooperate with the government.[3] The defendant admitted to his participation in drug trafficking as described above. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1]      Citations herein to docket entries refer to the Levine docket.

[2]      An indictment against Levine and Arroyo had been returned on May 5, 2011. (Docket Entry No. 6.)

[3]      The defendant was arrested on August 22, 2011, pursuant to an arrest warrant charging him with conspiring to possess with intent to distribute more than 1,000 marijuana plants and more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). He waived speedy arraignment and began cooperating shortly thereafter.

3

On February 7, 2012, the defendant pled guilty, pursuant to a cooperation agreement, to an information charging him with conspiring to distribute, and distributing, more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II), respectively, and conspiring to distribute, and distributing, more than 1,000 plants of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii), respectively.

The Court subsequently sentenced those defendants to terms of imprisonment as follows:

- <u>Sclafani</u>: 180 months, subsequently reduced to 168 months pursuant to 18 U.S.C. § 3582 (Docket Entry Nos. 251, 317).

- <u>Lombardo</u>: 168 months (Docket Entry No. 248).

- <u>Afrim Kupa</u>: 132 months (Docket Entry No. 272) (to run consecutively to a 46 month term imposed by Judge Weinstein in 2011 for bank larceny).

- <u>Lulzim Kupa</u>: 132 months (Docket Entry No. 238).

- <u>Ida</u>: 63 months (Docket Entry No. 224).

- <u>Martucci</u>: 63 months (Docket Entry No. 269).

- <u>Crisci</u>: 57 months (Docket Entry No. 244).

- <u>Papraniku</u>: 30 months (Docket Entry No. 230).

- <u>Levine</u>: 12 months (Docket Entry No. 241).

4

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Furthermore, if any of the other defendants had not pled guilty, the defendant would likely have been called to testify against them at trial, and would have provided important testimony linking them to the charged crimes.

III. <u>Sealing</u>

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Sealing is therefore warranted. <u>United States v. Doe</u>, 63 F.3d 121, 128 (2d Cir. 1995) (danger to person may be compelling reason to override public's right of access in courtroom closure context); <u>United States v. Amodeo</u>, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including the safety of witnesses and law enforcement personnel, may be compelling reason justifying sealing). Moreover, unsealing this letter, and thus revealing the details and extent of the defendant's cooperation (as distinct from the mere fact that he has cooperated), will likely harm the ability of law enforcement to secure current and future cooperation from persons similarly situated to the defendant, a fact that also weighs against public disclosure. <u>United States v. Amodeo</u>, 71 F.3d 1044, 1050 (2d Cir. 1995). Under these circumstances, the parties' interest in the defendant's safety, and the government's interest in obtaining future cooperation, outweigh the public's qualified right to access. As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court record those findings and file this letter under seal.[4]

---

[4] The defendant has moved the Court to seal the courtroom during sentencing. Although the government cannot consent to that motion, the government submits that the Court should continue to caption the case as a "John Doe" matter. Using "John Doe" instead of Iucci's true name on the public docket sheet is justified given the continued risk of danger to Iucci and his family, including the ability of Lombardo's and Sclafani's criminal associates, <u>e.g.</u>, members and associates of La Cosa Nostra, to follow them from the courthouse.

IV.		Conclusion

  For the foregoing reasons, the government respectfully submits this motion to permit the Court, in its discretion, to impose a sentence below the statutory minimum sentence and the applicable Sentencing Guidelines range. The government further moves for this letter to be filed under seal.

               Respectfully submitted,

               LORETTA E. LYNCH
               United States Attorney

          By:   /s/
               Allon Lifshitz
               Robert T. Polemeni
               Assistant U.S. Attorneys
               (718) 254-6164/6044

Cc:  Clerk of Court (JG)
    Joseph F. Kilada, Esq.
    Senior U.S. Probation Officer Patricia A. Sullivan